Chancellor James.delivered the following decree :
This is an injunction case, the history of which may he collected from the hill and answer. The Judge who granted the injunction, has stated <5 that complainant 0 ■’ _ 1 was entitled to an adjust at 0* his discounts, and statement of the amount m his debt in equity,” and ing of the same opinion, I directed the case to be referred to the master. He has reported the discounts, and the balance which he thinks due; and the whole merits of the case now come before me, in the shape of exceptions to the master’s report. Exception 1: On this it appears, that the payments of 701. on the 12th of No-veniber, 1798, and that of 100Í. on the 13th of April, 1799, were made on the bond of William Turnio, before the decree made for the payment oí\tlie annuity, which was not until May, 1808 ; that therefore the said two sums are to be credited as discounts on the first wiping off the interest, according to the established practice in such cases. Exception 2 : The payment 50l. on the above bond was agreed to be proved or 4 • ” 7 proved by the evidence of Milhain Robertson, witness believes that William Tunnodid not direct him to credit the said 50J. on the bond, or he would hare donoso. That as an attorney he had a demand against Tunno, in behalf of Alexander Inglis, on which he thinks he credited the payment. Wow it was Tunno's business to direct on what debt the payment should be made ; and as he did not, the witness was at liberty to credit it on any other demand against him ; at all events lie may call Robertson to an account, and not the defendants. Therefore as the rights of complainant, the security, are in this instance the same as Tunno's, this discount is not established. Exception 3 : On this the *602 complainant contends that he is to be allowed a discount f°r the money paid by Bremar on the annuity. By the decree of the Court, the annuity was the first cncum-hrance °n the house; ánd this was an encumbrance of which Tunno, the complainants principal, had full notice. He therefore might have taken it up, and thereby charged the defendant ; but he paid nothing, and the complainant stood in his shoes. How then is he to be allowed any thing ? Tunno was the first mortgagor, Bremar the second $ and to secure himself, he (Bremar) was perfectly right to disencumber the house, which he had purchased, by paying off a prior encumbrance. It makes no difference as to Tunno, whether the said encumbrance was that of the annuitant or that of the defendants who represent the first mortgage, and hold the second encumbrance. This discount therefore, cannot "be allowed. Wherefore the report of the master is confirmed, and the injunction must be dismissed at the costs of complainant.
From this decree an appeal was made.
The appeal was heard at the sitting, of the Court in March, 1814.
It was argued by Mr. Ogden and Mr. Ford for the appellant, Colonel Burn, that the laches in this case had been very great. The bond of Tuiino and Burn was dated in March, 1794 ; it was payable by instalments in 1797 and 1798 •, no suit was brought on it against Tunno, the principal, till the year 1801, and that was discontinued in 1804. The first demand on Col. Burn, the surety, was in the year 1809, when a suit was instituted against him. The principal was solvent many years $ he did not take the benefit of the insolvent debtors’ law till 1805. This long responsibility of the surety was produced by the delays and transactions between the debtor Tunno and the creditor Poaug and his representatives. The surety had a right to require that the ■ principal should be sued in a reasonable time* The suit was not brought till tliree years after the whole ho ¡id was due, and then ineifectnally, for the suit was disqon-tinued. This laches discharges the surety. It was essentially an extension of th^ credit of the debtor, at the risk of the surety. Injury might have resulted to the security, and has in fact done so, from the delay ; therefore he ought not to he held liable. See the case of Butler and Hamilton, the comptroller-general, decided in this Court. 1 Domat. 399, 400, 8§. Pothier on Oblig. 230, §370, 235, §377; 2 Bro. C. C. 578, Nesbet v. Smith ; 2 Yesey, 540, Rees v. Barrington; 4 Yesey, 824, Law v. E. I. Company ; New-York Cases in Error, p. 1, Ludlow v. Simond ; 7 Johnson, 332 ; 2 Hen-ning and Mumf. 116 j 1 Fonbl. 406.
*602 WiiiMAM D. James.
Mr. Wm. Ce.apts, jun. for the representatives of the John Poaug,
contended that they were entitled to enforce their judgment on the bond ; for that all that Tun-no and his surety in the bond had a right to require either injustice or under the agreement, was. to he indemnified against the operation of the annuity on the house and lot, for which the bond was given. That this had been done ; for Bremar the purchaser from Tunno had paid great part of the arrears, and he had been reimbursed by the representatives of Poaug. This as far as the payment went was a satisfaction of the annuity ; and it was immaterial to Tunno and his surety how or by whom it was satisfied. Tunno’s payment on his bond was suspended only till the annuity was satisfied , that has been done, and he and his surety were now bound to pay the whole bond, the price of the house.. And Mr. Paekee, the attorney of Colonel Burn, considered the agreement complied with.
As to the laches, there is no ground for the complaint, for no injury has resulted. Tunno was insolvent before the suit against him was discontinued. But this case does not come within the rules for the relief of sureties. Chief Justice Elsworth dismissed all the applications for sureties on the ground of laches in pursuing the He said the indulgence was a favor. The case of Shubrick v. Russell, decided in this Court, has settled this point.
The Judges of the Court of Appeals being divided in their opinions, delivered the following :
This is an appeal from the Circuit Court for having dismissed an injunction which the complainant had obtained, to restrain the defendants from proceeding at law to enforce a judgment on a bond given by William Tunno, with the complainant as security, for the purchase of a house by Tunno from J. Poaug, deceased. The complainant claims relief against the bond upon two grounds. 1. That Mr. Poaug and his administrators, the defendants have not been sufficiently diligent in endeavoring to procure payment from the principal, Mr. Tunno, and that on account of their unreasonable indulgence to him the complainant as surety ought to he discharged. 2. That if he is not entitled to a discharge on the first ground, yet that lie is entitled to a discount for the amount of an annuity to Elizabeth James charged exclusively by a decree of the Court of Equity on the house for which the bond was given, the amount of which it is alleged exceeds the sum due on the bond. There is no difference of opinion as to the first ground, A surety will he released where an obligee docs some act which varies the terms of the original contract; as by extending the term by some written agreement, or by any other act which is in its nature injurious to the surety. But a mere forbearance to sue is not such an act 5 it is often a benefit both to the surety and the principal, and if the surety apprehends otherwise, he should apply to a Court of Equity and compel the obligee to sue. On the second ground wc do not all agree, and as different conclusions are drawn from the same facts, it is importantthatthesc should be distinctly stated. Mrs. Poaug, the mother of the defendant’s intestate, bequeathed by her will to Elizabeth James an annuity of sixty pounds per annum, and charged with the payment *605 of it liev whole real estate, which she devised to her son. He soon after sold the whole to -different purchasers, none of whom it appears, had notice of the annuity, ex-copt Mr. Tunno, who purchased a. house and lot, paid down part of the purchase money, gave his bond for the balance, with the complainant as his surety, and took from Mr. Poaug, when he received titles, a bond to indemnify him against the annuity.
It is manifest from these facts that the original contract between Mr. Poaug and Mr. Tunno was, that Tan-no should pay the whole purchase money for the house, and that Poaug should indemnify him against the annuity ; that is that he should discharge it as it occurred. These then were the terms by which the complainant as the surety of Tunno, was also bound. Let us see n5w if there are any subsequent acts which alter the original contract. It appears that Tunno afterwards sold the house to Francis Bremar ; and that the annuitant, Miss James, having large arrears due to her, brought her bill to subject the house to the payment of her arrears and future annuity. As Bremar also bought with notice of this charge, and the purchasers of other parts of Mrs. Poaug’s real estate, had not, the Court decreed that the house should be exclusively liable to the payment of the annuity, as it must be obvious that the single object of the bill was to obtain a more efficient security for the regular payment of the annuity, this decree could not have had any other object in view$ it could not have had in view the relief of Mr. Tunno or his surety; they have not asked for it. There was indeed no ground on which they could claim it. Mr. Poaug or his administrators had done no act which varied the terms of the original contract $ and there was therefore no reason why the decree should make any alteration in it. By that contract Mr. P. was bound to discharge the annuity, and although the decree made the house exclusively liable to Miss 3 ames, yet he was still liable to Tunno under his bond of indemnity j and upon his discharging the annuity, Tunno and his surety continued still liable *606 to pay Mm the whole of their bond. But. the, decree' ^ * could not have intended to alter the original contract, for. another reason. If it released Mr. Poaug from his bond of indemnity, it wrould have impaired the rights of ' Tunno and the complainant $ for if, as is alleged, the amount of the annuity exceeds the balance due on their bond, they would be deprived by the decree of their remedy for this excess under the bond of indemnity, and if Miss James had continued to live they would have been deprived also of all indemnity against her future annuity. I can see nothing in the decree to authorise this construction ; on the contrary I can see no other effect in making the house exclusively chargeable with the annuity than to make this charge exclusive with respect to the other lands of Mr. Poaug, which were purchased from him without notice of the annuity. In all other respects it appears to me that the decree intended to leave the parties under the original engagements ; for it is not reasonable to presume that the Court would alter these when there was no ground to justify it. This construction is greatly strengthened by the subsequent conduct of the parties. The agreement between them which is made an exhibit, and which was entered into long since the decree, stipulates that the judgment against the complainants shall not be enforced until the defendants shall discharge the annuity. This surely means that the defendants were still bound under Mr. Poaug’s bond of indemnity to discharge the annuity, and. on this being done that the complainant was bound on his part to pay the full amount of the judgment. Now the defendants have performed the condition ; they have discharged the annuity by reimbursing Mr. Bremar, who paid a large proportion of it to the annuitant, and by settling the remainder with her legatee. It is true that Bremar had it in his option to make either Tunno or the defendants account for what lie paid ; and if he bad made Tunno do so, Tunno would have a right to discount pro tanto on his bond to Poaug, and the complainant as his surety would have been relieved to the *607 same amount. ButBremar has chosen to settle the defendants under their intestate’s bond of indemnity, and the complainant has no right to insist on a different mode of settlement. His original undertaking was to pay the whole bond, if his principal, Tunno, was indemnified against the annuity. His subsequent agreement expresses the same thing ; and the decree has not said, nor could it intend that without any legal or equitable cause supervening, he should be released from that undertaking. If then the defendants have completely indemnified Tunno by a full discharge of the annuity, they have thus fulfilled the original engagement of their intestate, and the complainant ought to fulfil his. I am of opinion therefore that the decree of the Circuit Court should he affirmed.
Thomas Waties.
We concur with our brother Waties in the opinion given above for the reasons assigned.
Hexry Wm. Des axis SURE.
Wihiam Dobbin James.
Poaug sold the house and lot to Tunno who paid down part of the purchase money and for the balance 1048Í. gave his bond with Burn as surety. Sometime after partial payments were made which were credited on the bond. Poaug’s mother who devised the house to him, by her will dated in 1791, gave an annuity of sixty pounds per annum to Miss James, and charged her real estate with it, and Poaug gave to Tunno when lie sold the house a bond to indemnify him against the encumbrance. A considerable- sum being due on account of the annuity, Miss James filed a bill against Tunno-who was in possession of the house, against Bremar who had set up a claim to it against the purchasers of the other parts of Poaug’s real estate devised to him by his mother, and against his administrators and admin-tratrix. The purchasers were exonerated from the charge on their purchases and the house sold to Tunno by the decree of the Court given in May, 1808, was *608 exclusively liable for the annuity. Since the decree, Bremar has paid the annuity and receipts have' been produced by which it appears that ho has received from the administrators and administratrix of Poaug * the sum applied by him for that purpose. Miss James, the complainant, was satisfied with the decree of the Court, because the house was sufficient to pay her her annuity and was appropriated for it, and the administrators and administratrix of Poaug* were satisfied be-* cause Miss James could hereafter only look to the house for payment. Bremar too was satisfied. He know of this encumbrance on the house before he took from Tunno his mortgage of it to secure his debt; and in his answer he says that he is willing that it should be sold. The original contract was between Tunno and Bremar on the one part and Poaug on the other, and if the administrators and administratrix of Poaug are intitled to recover, they must do it on the bond. This they cannot do because the decree of the Court making the house exclusively liable for the annuity obliges Miss James to look to it as the fund out of which it was to be paid, and prevented her from resorting afterwards to the estate of Poaug. The decree destroyed the relation between the contracting parties, and also the right of acting on the bond, for the amount of the annuity at the date of the decree being credited on the bond, it was discharged and could not by any subsequent transaction between Tunno and the representatives of Poaug’s estate, or any other person set up against Burn. The engagements of sureties are definite, and cannot be altered or varied without their privity and consent, and the Court will eagerly catch at any thing in their favor, when more is required of them than they arc bound to do by their undertaking and this upon the soundest principles of law and equity. The purpose for which security was required was completely answered by the, decree of the Court subjecting* the house to the payment of the annuity. The objection that the bond was paid if the house only could be resorted to for the an *609 nuity after the decree is equally fatal to the administrators and administratrix of Poaug as assignees of Bre-mar; but let us take another view of the subject. The administrators and administratrix of Poaug stand in the place of Bremar; be it so. The complainant Burn, Tunno’s surety, if he he liable, can only be liable on the bond. The bond was not given to Bremar nor does he hold it by assignment. The payment of the annuity by Bremar gives to him the rights on the house which belonged to Miss James; it puts him in her place | but it is said again that Tunno is his debtor. Admit that he is. His demand is distinct from and unconnected with the bond. IJut how does it appear that Tunno is indebted to Bremar? it is true that the Court in their decree took notice of a defeazance from Bremar to Tun-no, which was produced by Tunno, but this was only for the purpose of shewing that Tunno understood when he bought the house from Poaug that it was liable fop the annuity. By this defeasance the estate of Bremar in the house was to become absolute, if Tunno did not do certain things within a specified time j among others if he did not pay the annuity, taxes, &e. He did not pay them 5 of course Bremar acquired a greater interest in the mortgage premises than he had befoi’e. B ut whether he entitled himself to a credit with Tunno in this op any other way, or how accounts stand between them, it is not far us in this suit to say. They form the subject of another suit commenced in this Court by Tunno some time ago, in the year 1810, which is npw depending and in which the bill has been taken pro-confesso. Tun-no’s rights in relation to Bremar could not be affected by the decree in the case of Miss James against them and others. The answer of one defendant not being evidence against another, the sole object of that suit hewing to make the house liable for the annuity. If they are entitled to recover it back from Bremar, they may do so; but I do not think that this Court should interfere in this matter, because Bremar is no party to this suit. A circuitous mode has been pursued to make Burn, the *610 surety, liable, which has involved this case in some in-tricacy* ^ am opinion that Burn should be relieved* and therefore that the decree should be reversed.
A petition-for a. bill of rehearing, iourt petition did Utilice B, case which to bills of-re. parent on the faceofthede-cree : nor is legation^ new matter, jusüce'of the case, which could not be used at the firstf decree! iled to a facts1 in the case do th-e from them by the support the decree^eAnd not entitled! cumstances * °f, th,e. c{lse* to be dischar-without 1,10
Mr. Charts for representatives' of Poaug.
Messrs. Prioreau and Ford for J. Burn.
THEODORE GAIIRARD.
Chancellor Gairrard stated that Chancellor Thomp* son concurred with him in opinion.
At the sitting of the Court of Appeals in March, 1816, the counsel for Colonel Burn presented the following petition to the Court:
Petition states that on the 1st of March, 1794, James jjurn as surety for William Tunno, gave his bond with Tunno to John Poaug, conditioned for 1049?. payable in two instalments, the last of which on the 1st of March, 1798. That the principal obligor had purchased of John Poaug, devisee of Char-í*oauS> a house and lot in Charleston, and paid in part 1010?. and gave this bond to secure payment of remainder. That the house and lot stood charged under the will of Charlotte Poaug, in common with the , , , „ rest of her real estate, with the payment of an annuity Elizabeth Jamesy and it was therefore covenanted between the obligee of said bond and principal oh-ligov, that the house and lot should be free from the aunuity. On the notice of suit of Elizabeth James, the * principal obligor paid her 70?. in 1798, and 100?. in 1799, having also on the 12th of December, 1795, paid on his 421Z. 18s. 6d. besides other sums intended by him to-on the bond, but-which were not credited thereon. Elizabeth James procured, a decree of the Court of equity, subjecting the house and lot, exclu-of all other parts of Charlotte Poaug’s estate, ^01* payment of the annuity. By this decree it is-the obligation of the surety became annulled, an(i ^ie principal obligor entitled to be relieved alto-gether from i^g purchase, or at any rate to have discounted from his bond the whole amount of the arrears *611 of tlie annuity. By this decree it is also contended that the administrators and administratrix of John Poaug were discharged from the demand of Elizabeth James for her annuity. And they were afterwards can-tioned not to volunteer any payment upon the said annuity. On the 13th of June, 1812, the administrators and administratrix of J. Poaug entered up a judgment at law against J. Burn, on the bond aforesaid. Pro- ° . ceedings in equity were instituted by James Burn enjoin this judgment till the equitable merits could enquired into and decided upon; and in March, 1814, the cause was brought up by appeal, upon the ground that no enquiry had been made of the true amount of the sums alleged to .have been paid on said annuity, although the same had been duly urged, and the complainant’s counsel had insisted before the Court below, that a certain receipt produced, viz. of Fratícis Bremar for 699L was not conclusive proof of so much money paid ; and another receipt afterwards produced in the Court of appeals, viz. of James Ferguson for 400Í. was subject to the like exception and inconclusive. And the decision of this honorable Court of Appeals, so far as it embraced this part of the case, was manifestly upon their receiving these two receipts as conclusive evidence. That the petitioner hath reason to believe that none or a very small part was truly paid, but merely stipulated to bepaid after being collected, upon the judgment aforesaid. That the said appeal was brought up upon the further ground that the complainant under the circumstances of his case, as set forth in his bill, was entitled in equity to be discharged altogether from his bond. Wherefore petitioner prays that the said case and all the proceedings had thereon may be opened and that the same may be returned to the Circuit Court for the district of Charleston, in order that a reference may he had to the master for the purpose of ascertaining whether any and what sums were truly paid, to the said Francis Bremar and James Ferguson, on account the said annuity j and that the case after being imported *612 upon by the master, may be reheard upon the bill and answer, and such decree therein given as may be agrees able to justice and equity.
^r. ^HI0IEAU’ f°r petitioner.
Mr. T. Ford, Mr. B. Smith and Mr. It. Ogden, of counsel.
Messrs. Prioleau, Ogden, and Smith and Ford, in support of the petition, contended, that there is an inherent right in the Court to review its own decrees. That' there is no principle in the Constitution or in the law creating the Court, which prevents the Court of Appeals from re-examining its own decrees. That the Court of Appeals may be misled by misstatements, or surprised into error by a misapprehension of facts, or by the imperfect manner in whitíh the case is brought up ; and it would be grievous if the Court could not open the case, to remedy injustice. That it is in the discretion of the Court to grant rehearings. 3 P. ’VV'his. 8 ; 13 Vesey, 483. See as to bills of review, 1 Tern. 90, 416; 3 Atk. S3 ; 1 Bro. P. C. 93; 7 Bro.. P. C. 175, 204, 208, 303, 318; Coop. 92. That the case was imperfectly brought up to the Court of Appeals, and the whole case was not properly before the Court; which arose from an imperfect reference to the master, and of course .an imperfect 'report, and exceptions to that report, which exceptions alone were brought to the view of the Court of Appeals. That the decree was erroneous in three particulars :
1. In admitting the letter of Mr. Robertson, as evidence to prove that the sum of fifty pounds had not been paid by him on account of Tunno, on the bond in question ; such letter not being evidence ; and the agreement by Mr. Parker to receive the statement of Mr, Robertson as evidence, was not binding. *
2. In not allowing interest on the payments made.
3. In making the surety liable under the circumstances of the case.
That the Circuit Court was in error in deciding, that the receipts for money given by Mr. Bremar '%> Mr. Crafts, the agent of the administratrix of Poaug, as reimbitrsment for money he (Bremar») had paid on the annuity, were conclusive; and in refusing to receive evidence to explain or contradict the receipts,* and the Court of Appeals has confirmed this error. And the Court of Appeals also committed an efror in affirming the decree of the Circuit Court, which decided that the surety was not released from the bond* For the decree of the Court in 1806, on Miss James’ hill, to recover her annuity, liad made the house and land exclusively Hable j and Bremar having become the owner of the house and lot, became liable to the annuity. So that the house in his hands became the security, and the surety to the bond was released. Bremar acquiesced in this decree, and made payments on the annuity, and he thus extinguished the same, as far as the payments went. These were his payments, and not those of the representatives of Poaug, who were bound to have paid the annuity, and protected Tunno and his surety against the annuity. That Crafts’ repayment to Bremar, of the sums actually paid by him on the annuity, and which had relieved the house and lot from so much of the annuity, came too late. He had no’right to do it $ for he had notice from Burn, the surety, not to repay Bremar. But in fact the receipts of Bremar, do not prove conclusively, that Crafts has actually paid the money. There is ground to believe he only promised to do so,
Mr. William Crafts, jun. against the petition,
contended that the Court of Appeals having delivered its solemn judgment on the case, it is not open for the party dissatisfied therewith, at any subsequent period to bring the subject again under discussion. That if this were admitted, a party against whom a decree had been given, has only to wait till some of the Judges are re* moved by death or otherwise from the bench, and new Judges are placed on it, to apply for a bill of review, and have a new discussion and decision. This would be an intolerable evil, and there would be no end of litigation. That the petitioner had not made out a case to entitle hi|n to relief, even if the Court were at liberty to grant ^,ey *ia<^!10^ shewn any error appearing in the decree itself ; or that they had discovered new matter, which had arisen after the decree, or new proofs which could not be used at the time when the decree was delivered. That the statement of Mr. Robertson was pro- . perly received as to the question of the payment of fifty pounds, alleged to have been made by him for Tunno, It had been agreed to be received, and his statement was decisive against the allegation. That the master had made the calculations on the bond, and allowed the acknowledged payments correctly, according to the course of the Court. That the Circuit Court and afterwards the Court of Appeals had done right, in decreeing that the receipts given by Bremar to the agent of Poaug’s estate, were sufficient evidence of his having reimbursed Bremar for the sums which he had paid on the annuity j and that such payments were a fulfilment of the agreement to protect Tunno and his surety against the annuity. Tunno bought thé house at a certain price, and gave his bond for a certain sum. But as the house was hound by an annuity or rent charge, payment of part of the purchase money was suspended until the rent charge should be paid off and extinguished. This has been done, and Tunno is in no danger from that demand, Then his pretext for non-payment is destroyed.
The Court of Appeals having taken time to consider the subject, made up its judgment on the following grounds. The petition must be considered as an application either for a bill of review or for a rehearing. If it be for a bill of review, it does not make a case which comes within the rules which would regulate the conduct of the Court on that subject, even if it were conceded that the Court of Appeals, organised as it is by law, could grant bills of review. Lord Bacon, when chancellor, established the rules respecting bills of review ; and Lord Hardwicke says these rules have neve;,* been departed from. See 3 Atk. 34, 5. By these rules and the established j>ractice of the Court under them, « there are two sorts of bills of review, one founded on supposed error appearing in the decree itself; the other on new matter which must arise after the decree, or upon new proofs which could not have been used at the time when the decree passed.” If the application be. founded on the first ground, supposed eiTor appearing in the decree, the Court is of opinion that there is not such error apparent, as ought to. induce it to grant a bill of review. If the application be made on the ground of new matter arising after the decree, or new proofs, the petition does not allege the existence of the one or the othei*. But the petition professes to be for a rehearing, and prays that the case and all the proceedings had thereon may be opened, and that the same may be returned to the Circuit Court, in order that a reference may be had to the master to ascertain whether any and what sums of money were truly paid (by the representatives of J. Poaug) to F. Bremar and J. Ferguson, on account of the said annuity ; and that the case after being reported upon by the master, may be reheard on the bill and answer, and such decree made thereon as may be agreeable to justice and equity ; and the petition alleges as the principal ground for this application, that the Circuit Court, (and afterwards the Court of Appeals,) considered the receipts from Bremar and Ferguson to the representatives of Poaug, of certain payments on the annuity to Miss E. James, as conclusive evidence that such sums had been actually paid, whereas it is alleged that none or but a small part of the money was truly paid, but merely stipulated to be paid at a future day, after the money should be' collected on the judgment against the surety ; and that such payments by Bremai* (the purchaser from Tunno) to the annuitant, did not fulfil the obligation of J. Poaug and his representatives, to save Tunno harmless from the annuity ; for the payments were Bremar’s, not Crafts’. And also that the , surety ought under the circumstances to he discharge ed altogether from his bond.
The Court has had occasion to consider these applications for rehearing, and it has formed an opinion that it is not at liberty, under its present organization, after a full and final decree, to open cases for rehearing 5 though it has in a few instances corrected palpable er-Vors arising from mistatements, oversight or misapprehension, upon simple suggestions of such misapprehension. But this application is to open a case entirely, which lias been maturely considered and solemnly decided, in which the Court does not perceive any error. For if the fact alleged to exist, that the representatives of Poaug did not actually pay the money to Bremar and Ferguson, was fully proved, it dofes not appear to the Court that it would make any difference in the case. The parties entitled to the annuity which bound the house and lot, have declared themselves satisfied, and the annuity is extinguished, and the house is no longer hound. This is precisely what J. Poaug stipulated to perform, and hjs representatives agreed to do. In what way it was done is immaterial. As soon as it was done the representatives of Po,aug were entitled to the payment of the dpbt dug' on the bond from the principal and his surety, who were no longer in danger from the annuity. It would therefore be of no avail to the party to open the case to receiveproofs, which when made, would not change the merits of the case, or tlie judgment of the Court. Nor has the Court been able to discern any circumstances in the case which ought to discharge the surety from the liability which he voluntarily incurred, by joining in the bond, on which a judgment at law has been obtained. The case docs not come within the reason of those cases, in which this Court under a peculiar equity, has released the surety from his liability. The petition must therefore be dismissed.^